**Delmus PUNTON,**
**Plaintiff-Appellee/Cross-Appellant,**

v.

**The CITY OF SEATTLE,**
**Defendant-Appellant/Cross-Appellee.**

**Nos. 83–3890, 83–4132.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1984.

Submission Vacated Jan. 17, 1985.

Resubmitted May 5, 1986.

Decided Dec. 9, 1986.

Lawrence B. Linville, Keller, Rohrback, Waldo, Hiscock, Butterworth & Fardal, Seattle, Wash., for plaintiff-appellee/cross-appellant.

Susan Rae Sampson, Asst. City Atty., Seattle, Wash., for defendant-appellant/cross-appellee.

Before WRIGHT, GOODWIN and NORRIS, Circuit Judges.

GOODWIN, Circuit Judge:

The City of Seattle appeals from a district court judgment for money damages, assigning error to the denial of its motion to dismiss Punton's 42 U.S.C. § 1983 claim on the basis of the res judicata effect of a prior state court judgment. *Punton v. City of Seattle Public Safety Commission,* 32 Wash.App. 959, 650 P.2d 1138 (1982), *cert. denied,* 98 Wash.2d 1014 (1983). Punton cross-appeals, challenging the district court's refusal to grant him the full amount of attorneys' fees requested pursuant to 42 U.S.C. § 1988.

In September 1980, Punton, an officer of the Seattle Police Department, was dismissed from his job for conduct unbecoming an officer, disobedience of a superior's order, allowing unauthorized persons to ride in his patrol car and other infractions of department rules. Punton was not advised of the charges against him or afforded a hearing at any time prior to receiving his notice of dismissal.

Shortly after his dismissal, Punton filed an appeal with the Seattle Public Safety Civil Service Commission. He argued that the department's failure to provide a pretermination hearing rendered his discharge constitutionally invalid. The commission did not reach the constitutional question. Believing its jurisdiction to be "confined to the determination ... whether [the] removal, suspension, demotion or discharge was made in good faith," the commission affirmed the dismissal.

Punton then sought a writ of certiorari in King County Superior Court pursuant to Wash.Rev.Code Ann. § 7.16.040 (1961).[1] He again alleged that his discharge "was not in good faith, nor for cause, nor in conformance with due process."

The superior court concluded that dismissal without a hearing violated Punton's state and federal due process rights. Punton did not seek general damages. The court ordered Punton's reinstatement with back pay and awarded Punton attorneys' fees.

The commission appealed from the superior court to the Washington Court of Appeals. The court of appeals affirmed Punton's reinstatement, agreeing that there had been a due process violation. The appellate court, however, reversed the award of attorneys' fees. The court stated that proceedings pursuant to a writ of certiorari are limited in scope and may only "secure the rendition of 'the judgment which should have been rendered by the lower tribunal.'" *Punton v. City of Seattle Public Safety Commission,* 32 Wash.App. 959, 970, 650 P.2d 1138, 1144 (1982) (quoting *Bringgold v. City of Spokane,* 19 Wash. 333, 336, 53 P. 368, 369 (1898)), *cert. denied,* 98 Wash.2d 1014 (1983). Thus, the court concluded, "the relief granted under the writ may be only that which is necessary to set aside action in excess of 'the jurisdiction of [the] tribunal, board or officer, or [is illegal]' (sic) or to 'correct any erroneous or void proceeding, or a proceeding not according to the course of the common law.'" *Id.* (quoting Wash.Rev.Code § 7.16.040). The court held that because the commission lacked authority to award attorneys' fees, the superior court "likewise lacked jurisdiction in a certiorari proceeding to award fees." *Id.*

While awaiting the decision of the Washington Court of Appeals, Punton filed this action in the United States District Court for the Western District of Washington. Once again, Punton alleged that his dismissal violated his due process rights. In federal court Punton sought damages for emotional. distress resulting from the city's alleged violation of his constitutional rights, and attorneys' fees under 42 U.S.C. § 1988, relief he had neither sought nor received in the state court proceedings.

---

**1.** Section 7.16.040 states:

A writ of review shall be granted by any court, except a police or justice court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

Upon receiving the decision of the Washington Court of Appeals, Punton moved for partial summary judgment in the district court. He asserted that collateral estoppel, based upon the state court determination that his due process rights had been violated, prevented the city from relitigating any question of liability, and that only damages remained to be assessed. The city also moved for summary judgment, contending that the state court decision, having granted Punton all the relief to which he was entitled under state law, barred the federal action under the doctrine of res judicata. The district court granted Punton's motion and denied the city's motion. Subsequently, a jury awarded Punton $150,000 for mental suffering, and the court added an award of $15,000 in attorneys' fees. Punton cross-appeals from the denial of additional attorney fees.

We turn first to the city's appeal. As already indicated, the city contends that Punton's action was barred by the doctrine of res judicata.

In cases brought pursuant to 42 U.S.C. § 1983, a prior state court judgment has the same claim preclusive effect that the judgment would have in the courts of the state in which it was rendered. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984).

Under Washington law, clearly those claims which were actually litigated in the earlier proceeding are barred. *Seattle-First National Bank v. Kawachi,* 91 Wash.2d 223, 226, 588 P.2d 725, 727 (1978). The district court was of the opinion that Punton's claim for general damages for emotional suffering could have been litigated in state court by joining it with his civil service proceeding even though the kind of review (certiorari) provided for those disappointed in the result of the civil service proceeding is very narrow. *See Standow v. City of Spokane,* 88 Wash.2d 624, 632, 564 P.2d 1145, 1150 (1977). The Washington Court of Appeals in *Punton v. City*

*of Seattle Public Safety Commission,* 32 Wash.App. 959, 650 P.2d 1138, 1140–41 (1982), *cert. denied,* 98 Wash.2d 1014 (1983), implied that certiorari proceeding is a "special" form of action that is sharply limited in scope. The court, however, did not discuss the possibility of joinder and combination of claims in the superior court.

While we agree with the district court that Punton's federal claim was not barred by a requirement of exhaustion of state remedies, *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), it does not necessarily follow that Punton still had a viable § 1983 claim after he was reinstated in his job with back pay through state court action.

Punton's federal constitutional right was a right to not be deprived of property without due process of law. Tenured public employment has been held to be a species of property for § 1983 purposes. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Connell v. Higginbotham,* 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971). Punton's right to tenure and right to redress for wrongful termination were both created by state law. In this case, the undisputed facts are that Punton lost his job without any kind of a hearing. He immediately complained, received a civil service hearing, and in due course was reinstated with back pay. By resorting to post-deprivation state court process, he received everything he had lost, but he did not receive supplemental damages for emotional distress or attorney fees. The crucial question, therefore, is whether Punton, who after losing his job, obtained the incidental relief afforded by the law that created his job, is now entitled to additional relief in federal court under § 1983, for damages not available in state court under the type of procedure that he chose to follow.[2] In short, the question properly before the district court was whether or not Punton is entitled to something more and, if so, what more.

---

2. We are limited by the briefs and records in the case before us. It is not clear whether Punton could have combined all elements of his present

claim in state court proceedings as was said to be the case in *Clark v. Yosemite Community College District,* 785 F.2d 781 (9th Cir.1986).

In analyzing the probable intent of Congress in creating a federal remedy for the denial of constitutional rights without due process of law by state officials acting under color of state law, we look àt two facets of the problem: (1) is post-deprivation process the equivalent of due process in a given case? And, (2) how does the adequacy of the state's choices of remedy bear upon (1)? We know that Congress intended to afford a federal remedy in some cases. But is the federal remedy under § 1983 intended to be a supplemental tort remedy for those victims of state government blunders who receive a remedy at law in the state where the wrong occurred, but who want a better remedy in the federal courts?

If the question were one of first impression it would be difficult to say that Congress intended § 1983 to afford a supplemental remedy for all state and municipal property or liberty grievances in which state remedies were available but were deemed by the injured party to be inadequate. The Supreme Court has said that § 1983 is not a general tort relief statute imposing liability on state and local governments for the blunders of their employees. *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). On the other hand, history teaches that the theoretical possibility of a state court remedy does not always afford realistic protection for civil rights. A multitude of federal cases testify that a federal remedy has often been necessary to awaken state and local governments to their responsibilities toward those under their protection. *See, e.g., Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

On a case-by-case basis, the courts have evolved a doctrine that one who is deprived of a fundamental liberty or property interest by state action must be afforded a remedy, either through due process of law before the deprivation, or through some kind of process afterward that approximates due process. *See, e.g., Haygood v. Younger,* 769 F.2d 1350 (9th Cir.1985) (en banc) *cert. denied sub nom. Cranke v. Haygood,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986), and cases collected

therein. In *Haygood,* the interest infringed was a liberty interest, and by the time Haygood received a hearing and a remedy in the state courts, he had been kept in prison some 17 months after his keepers knew, or should have known, that he was claiming a right, as a matter of law, to be released. We held that the release, belatedly, after a hearing, did not bar his resort to federal court for the additional remedy of damages and attorneys' fees.

In the case at bar, Punton complained after he had lost his job without a hearing, in circumstances in which the City's own regulations required a hearing, and in due course he was reinstated in his job with back pay. He says that he was not able to litigate in state courts his claim for emotional suffering because the only process available to him was limited to reinstatement and back pay. The district court disagreed, but held that exhaustion of state remedies was not required.

Punton's case is analogous to that of an injured workman in an industrial plant covered by compulsory workmen's compensation who collects his statutory compensation and then looks around for someone to sue for additional damages for mental suffering, loss of consortium, and the like. The injured workman sometimes can find a third party who supplied an appliance or who otherwise may be sued for damages, but he is barred by the claim preclusion feature of the local compensation law from relitigating his own employers' liability. Here there is no third party with a deeper pocket. Punton is looking for supplemental relief in another judicial system.

Punton's election to proceed initially in the state court amounted to a splitting of his cause of action as well as an election of remedies. At the start, he could have proceeded directly in federal court with a § 1983 claim for reinstatement, back pay, and general damages. Instead, he first chose to seek the relief of reinstatement and back pay in the state court. He also sought this relief in a concurrent action in federal court. The result of these dual proceedings was to create a narrow issue

preclusion advantage in federal court with respect to the issue of the wrongfulness of the city's termination of his employment.

Punton now represents that he could not have litigated his § 1983 claim in the state court, and therefore his § 1983 claim cannot be barred by the claim preclusion effect of his partial recovery under the state judgment. His point does not necessarily follow.

It is highly unlikely that Congress intended to permit state court vindication of state created property interests to set up offensive collateral estoppel for federal claims brought pursuant to § 1983. Washington state law created both Punton's job and the civil service review which he employed to get his job back, with back pay. In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), a bus mechanic and security guard were dismissed under a civil service system which, unlike Seattle's, provided no pretermination hearing. The Supreme Court held that a balancing of the interests involved required some form of pretermination hearing, a matter provided for by Washington's law in this case. In contrast, Punton is not claiming solely that Washington law denied him a pretermination hearing. He is claiming that the officials charged with carrying out the law deprived him of a pretermination hearing and that when he carried his complaint through post-termination process, the remedy he received was not adequate because it did not include emotional distress damages and attorney fees.

We recently held in an employment grievance case originating in California that claim preclusion arising from a state court mandamus action in which substantial but incomplete relief was granted barred relitigation of the claim in federal court under § 1983. *Clark v. Yosemite Community College District*, 785 F.2d 781 (9th Cir.1986). In *Clark*, a faculty member brought mandamus to vindicate employment rights (to be free from administrative harassment and the placement of defamatory information in his personnel files). Because California law permits the joinder of claims arising out of the federal constitution with mandamus claims, we held that Clark was precluded from splitting his claims into state and federal segments and litigating his federal claims in federal court after successfully pressing his mandamus claims in state court. *Id.* at 786–87.

Another instructive case is that of a police officer in Philadelphia who was charged with a crime, discharged from his job, acquitted after trial, and upon application to the municipal Civil Service Commission, reinstated without back pay. *Cohen v. City of Philadelphia*, 736 F.2d 81 (3rd Cir.1984). The commission found that whether or not Cohen had participated in the burglary for which he was acquitted, he had violated police department rules by lending money to a superior officer. Cohen thereupon sued in federal court, alleging a § 1983 claim. Summary judgment for the city was affirmed on the basis of claim preclusion. The Third Circuit held that Cohen's claim of deprivation had been partially litigated in the state administrative system, and that had he wished to do so, he could have appealed for additional relief through the state court system. Because he chose to accept the partial remedy granted by the state court and then move over to federal court, the court held that he had not been deprived by the state defendants of his property without due process of law. Citing *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the court held that where the state would have provided adequate post-deprivation relief had Cohen chosen to pursue it, the state had not denied him due process of law. The court noted that it was not adopting an exhaustion-of-state-remedies rule, but rather that it was holding that a state has not deprived its inhabitants of due process of law in cases in which the plaintiff has made an election to avail himself of a state remedy and then abandoned it when the state courts were still open. *Cohen*, 736 F.2d at 86–87.

It is not necessary in this case to decide how far we might be willing to march to the drum of the Third Circuit if we were faced with another case on all fours with *Cohen*. It does appear, however, that Punton decided at some point, while waiting for

further proceedings in the state courts, to seek more lucrative relief in federal court. We have found no Supreme Court case holding that merely because litigation strategy and the perceived advantages of a more adequate award in federal court make it an attractive alternative, a person aggrieved by official state action can abandon a remedy that colorably satisfies due process of law in the state court after recovering substantially what he has lost. On the contrary, *Migra v. Warren City School District Board of Education*, 465 U.S. at 85, 104 S.Ct. at 898, instructs to the contrary.

The judgment of the district court is reversed with neither party to recover costs in this court.

The cross-appeal is dismissed as moot.

## NORRIS, Circuit Judge (dissenting):

The question presented by the City's appeal concerns the preclusive effect of a final Washington state court judgment reinstating Delmus Punton as a Seattle police officer and awarding him back pay because the Seattle Police Department denied Punton due process by firing him without a pretermination hearing. *Punton v. City of Seattle Public Safety Commission*, 32 Wash.App. 959, 650 P.2d 1138 (1982), *cert. denied*, 98 Wash.2d 1014 (1983). More specifically, the question is whether the Wash-

ington state court judgment precludes Punton from bringing a separate § 1983 action to recover his damages for pain and suffering and his attorney's fees.

For reasons that are obscure, the majority disposes of this appeal on the ground that the City did not deny Punton due process. Thus the majority decides the merits of Punton's constitutional claim without determining the preclusive effect of the contrary state court judgment.[1] I find this peculiar for several reasons: First, concerns for judicial economy and restraint counsel us to address threshold preclusion issues before reaching the merits of a claim, especially a constitutional one. Second, the City has not appealed the district court's summary judgment ruling in Punton's favor that the state court judgment bars the City from relitigating the merits of the due process question in this federal action. Third, second-guessing the Washington Court of Appeals' decision that Punton was denied due process contravenes the principle of "comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *cf. Younger v. Harris*, 401 U.S. 37, 43–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971).

Rather than revisiting the merits of the due process question in this dissent,[2] I ad-

---

1. Admittedly, the opinion's organizational and analytical confusion makes it difficult to characterize succinctly the majority's reasoning. The majority seems initially to engage the res judicata issue, citing *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) and noting it must focus on Washington state law. *Ante*, at 1380. Yet the majority then shifts its focus to the merits of Punton's claim, rephrasing the central question as whether "Punton still had a viable § 1983 claim after he was reinstated in his job with back pay through state court action." *Ante*, at 1380. After referencing Supreme Court § 1983 jurisprudence and speculating as to probable congressional intent, the majority concludes that having "obtained the incidental relief afforded by the law that created his job, [Punton is not] now entitled to additional relief in federal court under § 1983 . . . ." *Ante*, at 1380.

    The majority's failure to properly focus on the res judicata issue is further evidenced by the

fact that neither of the two cases specifically relied upon by the majority applied Washington state law as the majority concedes is required under *Migra*. *See Clark v. Yosemite Community College District*, 785 F.2d 781 (9th Cir.1986) (applying California law) and *Cohen v. City of Philadelphia*, 736 F.2d 81 (3rd Cir.1984) (applying Pennsylvania law).

2. I note, however, that the majority's analysis is quite troublesome in several respects. First, the majority reaches its conclusion that a post-deprivation remedy constitutes all the process that is due without conducting the balancing test required by *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (balancing the private interests in retaining employment, the governmental interest in expeditious terminations, and the risk of erroneous terminations). The Court in *Loudermill* found some measure of pretermination process required before a public security

dress the sole question properly presented by the City's appeal: whether the state court judgment reinstating Punton as a police officer and awarding him back pay bars him from claiming damages for pain and suffering and attorney's fees in a separate § 1983 action. The claim preclusive effect of a prior state court judgment in a federal § 1983 action is, of course, determined by reference to state preclusion law. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56-(1984).[3]

At first blush, it would seem that elementary principles of res judicata would bar Punton from bringing a separate action to seek relief over and above the relief he was awarded in his successful action against the City. Punton contends, however, and the district court below agreed, that he is not barred under Washington law from bringing an independent action to recover general damages and fees for his wrongful dismissal after winning reinstatement and back pay. This counterintuitive argument is based upon the limited jurisdiction enjoyed by the Washington superior court when reviewing the Seattle Safety Commission's decision that Punton had not been wrongfully terminated. Punton claims that the superior court's jurisdiction was limited to awarding him reinstatement and back pay for two reasons: First, the court could grant him only that relief which the administrative tribunal was authorized to provide, and second, the court could not entertain evidence concerning his claim for damages and fees because that evidence was not contained in the administrative record. Citing *Seattle-First National Bank v. Kawachi*, 91 Wash.2d 223, 226, 588 P.2d 725, 727 (1978) for the proposition that under Washington law res judicata precludes relitigation only of "matter[s]

---

guard could be terminated, *despite* the availability of post-deprivation remedies

Second, while the majority recognizes it must consider "how does the adequacy of the state's choices of remedy bear upon" whether the state's post-deprivation process is fully "adequate" to satisfy due process requirements, *ante,* at 1381, the majority never engages in such an analysis. A federal court must do far more than offhandedly assert that "a remedy ... *colorably* satisfies due process," *ante,* at 1383 (emphasis added), to ensure that a state post-deprivation remedy is truly adequate before invoking *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to bar a § 1983 action.

Finally, if the majority means to suggest that Washington provides an adequate post-deprivation remedy simply because Punton could have raised a § 1983 action during or subsequent to his state court proceeding, then despite its protest to the contrary, the majority is indeed imposing an exhaustion of state remedies requirement. Under the majority's analysis litigants could never bring a § 1983 action in federal court until they first had asserted the same action in state court. This, of course, is not the law. *See Patsy v. Board of Regents of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

**3.** The majority's statement that "It is highly unlikely that Congress intended to permit state court vindication of state created property interests to set up offensive collateral estoppel for federal claims brought pursuant to § 1983," *ante,* at 1382, is misguided for two reasons. First, in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct.

411, 66 L.Ed.2d 308 (1980), the Supreme Court held that Congress' clear intent in enacting the federal full faith and credit statute, 28 U.S.C. § 1738, was that "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra,* 465 U.S. at 83, 104 S.Ct. at 897. The Court has never suggested that § 1738 incorporates state collateral estoppel law for defensive but not offensive purposes, and such an interpretation would be at odds with the legislative history discussed in *McCurry* and *Migra.*

Second, the majority's concern with *offensive* collateral estoppel is misplaced because no question of offensive collateral estoppel is before us for decision. The only preclusion argument made by the City on appeal is that Punton's federal court action is barred by the state court judgment, an affirmative defense based on res judicata. The only party to invoke offensive collateral estoppel in this litigation is Punton. The district court agreed with Punton that the City was precluded under Washington law from relitigating the merits of the due process question once the Washington Court of Appeals decided that issue in Punton's favor. The City has not appealed this application of offensive collateral estoppel by the district court in granting Punton partial summary judgment. The majority's gratuitous comment casting doubt on Punton's collateral estoppel argument suggests once again that the majority's decision is driven, not by Washington res judicata law, but by its antipathy towards the merits of Punton's due process claim.

which could and should have been litigated in the [previous] action," Punton contends he is therefore free to seek general damages and fees in a separate action.

Without the benefit of the thinking of Judges Wright and Goodwin on this issue of Washington law, I am inclined to agree with Punton that the district court's judgment should be affirmed. First, when a Washington court grants a writ of certiorari to review the decision of an administrative tribunal, the court's jurisdiction is quite limited in scope. "[T]he function of a writ of certiorari is to secure the rendition of 'the judgment which should have been rendered by the lower tribunal," *Punton*, 32 Wash.App. at 970, 650 P.2d at 1144 (quoting *Bringgold v. Spokane*, 19 Wash. 333, 336, 53 P. 368, 369 (1898)). Because of this limited appellate function "the relief granted under the writ may be only that which is necessary to set aside action in excess of 'the jurisdiction of [the] tribunal, board or officer, or [is illegal] (sic)' or to 'correct any erroneous or void proceeding, or a proceeding not according to the course of the common law.'" *Id.* (quoting Wash. Rev.Code § 7.16.040). *See Bringgold v. Spokane*, 19 Wash. at 336, 53 P. at 369 (police commission lacked jurisdiction to assess costs against the losing party and therefore superior court similarly lacked jurisdiction to do so upon review pursuant to writ of certiorari). In this case the jurisdiction of the Safety Commission was "confined to the determination of the question of whether [the] removal, suspension, demotion, or discharge was made in good faith for cause." Seattle Municipal Code § 4.08.100A. Consequently, the superior court could not have awarded damages for pain and suffering or fees. *See Punton*, 32 Wash.App. at 970, 650 P.2d at 1144 (superior court may not award attorneys' fees in certiorari proceeding because administrative tribunal lacked authority to award fees).

Moreover, under Washington law a superior court acting pursuant to a writ of certiorari is limited to the administrative record when adjudicating a dispute. It can neither hear witnesses nor receive evidence. *Carleton v. Board of Police Pen-* *sion Fund Commissioners*, 115 Wash. 572, 197 P. 925 (1921). *See also Chaussee v. Snohomish County Council*, 38 Wash. App. 630, 644–45, 689 P.2d 1084, 1095 (1984) (superior court had jurisdiction to consider issue of equitable estoppel not considered by administrative tribunal below but properly concluded it could not decide issue because administrative record was inadequate); *Bay Industry, Inc. v. Jefferson County*, 33 Wash.App. 239, 240–41, 653 P.2d 1355, 1357 (1982). The record of the administrative proceeding below does not contain the evidence concerning Punton's alleged pain and suffering that Punton presented to the federal district court in his § 1983 action. Because the superior court was precluded under Washington law from hearing the evidence necessary to assess Punton's damages, the court could not award him in its certiorari proceeding the relief which he now seeks in his second action.

The City responds that, even if the Washington superior court had no jurisdiction in the certiorari proceeding to award damages and fees, Punton could have presented a claim for damages and fees in an action at law and *joined* it to his certiorari proceeding. *Appellant's Opening Brief*, at 11–12. The City cites no authority for this contention, and I find the argument unpersuasive. It would make little sense for Washington to design a special certiorari proceeding to streamline review of administrative adjudications and then permit plaintiffs to join cumbersome damage actions to their appeal.

The City bases its contention on the Washington Supreme Court's statement in *Standow v. Spokane*, 88 Wash.2d 624, 632, 564 P.2d 1145, 1150 (1977) that "[f]iling an action for damages does not preclude the subsequent issuance of a writ of certiorari in the same cause, upon a proper showing, where relief in the way of damages is inadequate as it is here." Reliance on this language seems to me to be misplaced. The court in *Standow* made this statement while addressing a claim that the plaintiff was not entitled to a writ of certiorari because in an earlier action he had sought

damages, and certiorari is only available when there is no adequate remedy at law. *See* Wash.Rev.Code § 7.16.040. The court apparently intended merely to indicate that a party filing a damages action is not precluded from later seeking a writ of certiorari if she can demonstrate that the damage remedy is inadequate. The statement seems to support Punton's position: an action for damages and a certiorari proceeding are two separate actions which can be brought subsequent to one another by litigants in the Washington state court system. *Standow* does not say that the two actions can be joined in a single proceeding.

It therefore seems to me that, according to Washington res judicata law, Punton would not be barred from bringing a § 1983 action for damages and fees in state court, and hence he is not precluded from doing so in federal court according to *Migra*.