FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 DEC 10 AM 8: 36

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| OLY-IDA SHOREWOOD HEIGHTS, LLC., SHOREWOOD HEIGHTS APARTMENTS, | No. 76563-9-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ANDREW L. MAGEE; MONICA ARREOLA; ALL OCCUPANTS; | |
| Appellants. | FILED: December 10, 2018 |

APPELWICK, C.J. — In this residential unlawful detainer action, Magee argues that the trial court erred in finding that he did not accept Oly-Ida's lease renewal offer, and concluding that his failure to accept the offer resulted in a month to month tenancy. He also argues that the trial court should have given his first filed action priority over this case. And, he argues that Oly-Ida's acceptance of two rent payments created a new tenancy. We affirm.

## FACTS

Oly-Ida Shorewood Heights, LLC (Oly-Ida) leased an apartment to Andrew Magee and his wife, Monica Arreola (Magee[1]). Magee's lease agreement expired on September 14, 2016. On July 18, 2016, Oly-Ida sent a letter addressed to Arreola, stating that failure to respond or sign a lease renewal 10 days before the

---

[1] Unless otherwise stated, we refer only to "Magee" throughout for clarity.

lease expired would result in being converted to a month to month tenancy. Magee did not accept this offer before it expired.

On September 12, 2016, Arreola received an e-mail from Shorewood Heights Management, thanking her for renewing her lease. As of that date, Magee had not signed a new lease.

Magee had still not signed a new lease by September 18, 2016. That day, Vicki Kraus, a Shorewood Heights leasing specialist, e-mailed Magee. She told him to "take a look at this [as soon as possible], otherwise we will be forced to transfer your account to the month to month rate." On September 20, 2016, Oly-Ida posted a 20-day notice to terminate tenancy on Magee's door. The notice stated that Magee's tenancy would terminate on October 31, 2016. After the notice was posted, Leslie Lopez, the area manager, received a notification saying Arreola had signed the lease. Magee never signed the lease.

Magee did not comply with the notice to terminate tenancy. On November 16, 2016, he filed an action in King County Superior Court against Shorewood Heights Apartments.[2] He sought judgment against Shorewood Heights Apartments for breach of contract, retaliation, and intentional infliction of emotional distress, and also sought to enforce a one-year lease.

On December 9, 2016, Oly-Ida filed this unlawful detainer action, seeking to evict Magee from the premises. At the show cause hearing on the matter, Magee argued that this action should be abated, based on his first filed action

---

[2] In his complaint, Magee named the defendant as "Shorewood Heights Apartments, et al." instead of Oly-Ida Shorewood Heights, LLC.

2

pending before the trial court. The trial court disagreed. Magee also argued that he had accepted Oly-Ida's lease renewal offer, and had a new lease starting on September 15.

The trial court found Magee guilty of unlawful detainer. Specifically, it found that he did not accept Oly-Ida's renewal offer prior to it being withdrawn, and that failure to timely accept the offer resulted in a month to month tenancy after the lease expired. Magee then brought a motion for reconsideration, which the trial court denied. Magee appeals.

## DISCUSSION

### I. Priority of Action

Magee argues first that the trial court erred in determining that the priority of action doctrine did not apply in this case. He asserts that the trial court should have stayed this case while his first filed action was still pending before the same trial court.

A trial court's decision denying a motion to stay proceedings based on the priority of action doctrine is a legal determination that we review de novo. Bunch v. Nationwide Mut. Ins. Co., 180 Wn. App. 37, 41, 321 P.3d 266 (2014). Generally, the priority of action doctrine "applies only if the two cases involved are identical as to (1) subject matter; (2) parties; and (3) relief." City of Yakima v. Int'l Ass'n of Fire Fighters, AFL-CIO, Local 469, Yakima Fire Fighers Ass'n, 117 Wn.2d 655, 675, 818 P.2d 1076 (1991).

In Bunch, this court noted that these elements are not to be applied inflexibly. 180 Wn. App. at 41. As an example, it cited State ex rel. Evergreen

3

Freedom Found. v. Wash. Educ. Ass'n, 111 Wn. App. 586, 49 P.3d 894 (2002) (EFF). Bunch, 180 Wn. App. at 42. In that case, this court stated that the underlying purpose of the three elements is to determine whether the "identity" of the actions are "such that a decision in one tribunal would bar proceedings in the other tribunal because of res judicata." EFF, 111 Wn. App. at 607.

In Magee's first filed action, he claimed breach of contract, retaliation, and intentional infliction of emotional distress. He sought specific performance of a one year lease and attorney fees. In this action, Oly-Ida sought to evict Magee. These actions are not identical as to subject matter or relief. Unlawful detainer actions are limited to the question of possession and related issues, such as restitution of the premises and rent. Munden v. Hazelrigg, 105 Wn.2d 39, 45, 711 P.2d 295 (1985). Magee could not bring his claims in that action. Thus, a decision in one action would not bar proceedings in the other. And, staying Oly-Ida's action would have failed to give priority to an unlawful detainer action, as required under Washington law. See RCW 59.12.130 ("[A]ctions under this chapter shall take precedence of all other civil actions."). Accordingly, the priority of action doctrine does not apply in this case.[3]

---

[3] Oly-Ida filed a motion asking this court to take judicial notice of the proceedings and mandate in Magee v. Shorewood Heights Apartments, No. 77853-6-I, pursuant to ER 201 and RAP 9.11. This court dismissed Magee's appeal in that case. Oly-Ida states that judicial notice "will allow this court to more efficiently reach a final resolution to this matter without increasing its workload." Because taking judicial notice is not necessary to resolve the priority of action issue, the motion is denied.

## II. Lease Renewal

Magee argues next that the trial court erred in finding that Magee did not accept Oly-Ida's offer for a renewed lease before it was withdrawn.[4] He also argues that the trial court erred in concluding that Magee's failure to timely accept the offer resulted in a month to month tenancy. He asserts that he responded and renewed the lease, "so that they had a new lease beginning on September 15, 2017."[5] He relies on a written communication Arreola received from Shorewood Heights management on September 12, 2016, which states, "Thank you for renewing your lease and continuing to make Shorewood Heights your home. Your new lease will begin on 09/15/2016."

This court reviews the trial court's findings of fact in an unlawful detainer action for substantial evidence. Burgess v. Crossan, 189 Wn. App. 97, 101, 358 P.3d 416 (2015). "Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person that a finding is true." Hegwine v. Longview Fibre Co., 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006), aff'd, 162 Wn2d 340, 172 P.3d 688 (2007). A reviewing court begins with a presumption in favor of the trial court's findings, and the appellant has the burden of showing that a finding of fact is not supported by substantial evidence. Green v. Normandy Park Riviera Section Comty. Club, Inc., 137 Wn. App. 665, 689, 151

---

[4] In Magee's assignments of error, he also states that the trial court erred in finding that Magee has no setoffs or counterclaims. But, Magee does not address this finding elsewhere in his brief. This court does not consider an assignment of error not briefed or supported by authority. Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992).

[5] Magee likely intended to state "September 15, 2016." The dates he refers to elsewhere in his argument are from September 2016.

P.3d 1038 (2007). Unchallenged findings are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Conclusions of law are reviewed de novo. Hegwine, 132 Wn. App. at 556.

RCW 59.04.010 requires a lease to be in writing. Leases over one year are legal if they are in writing and acknowledged. W. Plaza, LLC v. Tison, 184 Wn.2d 702, 710, 364 P.3d 76 (2015).

"Leases are contracts, as well as conveyances." Seattle-First Nat'l Bank v. Westlake Park Ass'n, 42 Wn. App. 269, 272, 711 P.2d 361 (1985). "Mutual assent is required for the formation of a valid contract." Yakima County (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 388, 858 P.2d 245 (1993). Basic contract law is that an offer "may be revoked by the offeror at any time prior to the creation of a contract by acceptance." 1 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 5.8 at 960-61 (4th ed. 2007).

Magee does not assign error to the trial court's finding that on July 18, 2016, Oly-Ida issued an offer to renew the lease. The offer letter stated that failure to respond or sign a lease renewal would convert the agreement to a month to month tenancy. And, Magee does not assign error to the trial court's finding that the offer had a time limit and had to be accepted 10 days before the lease expired, which he did not do. Magee's lease expired on September 14, 2016. Accordingly, the original deadline for him to renew the lease was September 4, 2016.

Magee testified that he did not receive a written copy of the new lease until September 12. That same day, Arreola received an e-mail from Shorewood Heights thanking her for renewing her lease. Lopez testified that the e-mail Arreola

received is a response generated from their system when a lease is uploaded to the resident portal. She stated that it is not a signed lease. She also stated that for a lease to be valid, a manager's signature is required. And, she stated that "[t]he lease [had not] been signed," and that "[i]t's our company policy. A lease isn't in effect until it's signed by all parties over the age of 18." Magee does not dispute that as of September 12, no parties had signed the lease.

On September 18, 2016, Kraus sent the following e-mail to Magee: "I see that you have not yet accepted the invitation to the online portal, or signed the lease. Please take a look at this [as soon as possible], otherwise we will be forced to transfer your account to the month to month rate." At oral argument, Oly-Ida confirmed that this e-mail constituted a new offer.

Magee testified that on September 20, he went to the leasing office to sign the lease. Alisha Shumovich, who manages lease renewals at Shorewood Heights, testified that when Magee came in, she told him they would need to regenerate renewal offer letters. She testified that Magee then threatened her, told her he was going to sue them, and tried to record their conversation. She then asked Magee to leave, because he was "being very aggressive" and making her staff uncomfortable. Magee did not sign the lease before leaving.

After he left, Shumovich went with the leasing manager and her assistant to post a 20-day notice on Magee's door. Shumovich did not post the notice herself, but watched someone else post it. Two copies of the notice were also mailed by regular mail, and two copies were mailed by certified mail. The notice stated that Magee's tenancy would terminate on October 31, 2016. Lopez testified

7

that after her staff posted the notice, they got a notification saying Arreola had logged on and signed the lease.

Magee testified that he never got the 20-day notice. He also testified that he was not there when the notice was posted on his door.

Magee argues that Oly-Ida confirmed in writing that a renewed lease was formed as of September 12, 2016. But, it is undisputed that as of this date, no new lease had been signed. And, although Kraus's September 18 e-mail invited Magee to sign a new lease, Arreola did not sign the lease for two more days. She signed it after Shumovich posted a 20-day notice on the door.[6] "An offeree's power of acceptance is terminated when the offeree receives from the offeror a manifestation of an intention not to enter into the proposed contract." RESTATEMENT (SECOND) OF CONTRACTS § 42 (AM. LAW INST. 1981) (boldface omitted). The posting of the 20-day notice manifested Oly-Ida's intent to no longer enter into a new lease with Magee, or continue his tenancy. Substantial evidence supports the trial court's finding that Magee did not accept Oly-Ida's offer before it was withdrawn. Because Oly-Ida withdrew the offer without it being accepted, the trial court did not err in concluding that Magee's failure to timely accept the offer resulted in a month to month tenancy.

## III. New Tenancy

Magee argues that a new tenancy was created when Oly-Ida "invited and received payment of rent" for April 2017 and May 2017. He argues that Oly-Ida's

---

[6] And, Magee never signed the lease. Magee does not argue that Kraus's e-mail constituted a new offer, or that Arreola's signature on September 20 constituted an acceptance of that offer.

acceptance of rent defeated the current unlawful detainer action. He states that this issue was raised in his motion to stay enforcement of the writ of restitution and to establish appellate bond. And, he states that at a May 4, 2017 hearing, "[t]he Magee family was denied its stay pending appeal to be granted as a right . . . and [the trial court] never considered 'Whether a new tenancy has been established by the allegedly negotiated check.'"

At a May 4, 2017 show cause hearing, the trial court said it would consider whether a new tenancy had been created. Magee stated at the hearing that he was (1) asking for the lease offered to him and that he accepted, and (2) seeking a stay. The trial court stated it had already denied the stay. And, near the end of the hearing, it stated that they would not be arguing about tenancy because Magee had used up his time. There is no trial court order deciding the new tenancy issue in the record. Magee's new tenancy argument is not properly before this court, because it is based on facts that took place after his notice of appeal.[7]

But, even if the argument were properly part of this appeal, Magee's argument would fail. This unlawful detainer action is based upon Magee holding over as a tenant after receiving notice that Oly-Ida was terminating his tenancy. In an unlawful detainer action based upon the nonpayment of rent, "the landlord

_____

[7] This case is on appeal from the trial court's February 10, 2017 order denying Magee's motion for reconsideration. While this appeal was pending, the trial court denied Magee's motion to stay enforcement of a writ of restitution on April 14, 2017, and he was evicted on May 5, 2017. Magee then sought relief in this court on May 24, 2017. He asked this court to reverse the trial court's denial of his motion to stay, grant a stay of the writ of restitution pending review, and reinstate his possession of the premise pending review. This court determined that Magee's motion was untimely, and that he presented no basis or good reason to grant such relief.

waives prior breaches by accepting rent after he has served the notice to quit." 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.80, at 447 (2d ed. 2004). Conversely, when a tenant holds over after receiving a general notice to quit, the default is not curable. Id. at 440. The notice is absolute, and the tenant has no choice but to vacate within the notice period. Id. And, the landlord is entitled to the fair rental value of the premises during the hold over period. Id. at 448. Accordingly, Oly-Ida's acceptance of rent payments did not defeat this unlawful detainer action and create a new tenancy.

IV.    Attorney Fees

Magee requests attorney fees pursuant to RAP 18.1. He has not prevailed on appeal, and he does not cite any authority granting him the right to recover attorney fees on review. Therefore, his request is denied.

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Cox, J._                    _Mann, J._